**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | |
|---|---|
| In re TONY GEE'S, INCORPORATED,  ) | Case No. 12-61015-LYN |
|                                                         ) | |
| Debtor,                                         ) | |
| _____ ) | |

**MEMORANDUM and ORDER**

This matter comes before the court on a motion by Dean Family, LLC, ("Dean Family") for an order declaring that a lease between Tony Gee's, Inc., (the Debtor")[1] and Dean Family has been terminated under state law. In the alternative, Dean Family seeks an order compelling the Debtor to accept or reject the lease by June 16, 2012.

*Jurisdiction*

This Court has jurisdiction over this matter. 28 U.S.C. § 1334(a) & 157(a). This is a core proceeding. 28 U.S.C. § 157(b)(2)(A). Accordingly, this Court may enter a final order. This memorandum shall constitute the Court's findings of fact and conclusions of law as required by Fed. R. Civ. P. 52, which is made applicable in this proceeding by Fed. R. Bankr. P. 7052.

*Facts*

On May 1, 2010, the Debtor and Dean Family entered into a five-year commercial lease agreement[2] ('the Lease") pursuant to which Dean Family leased to the Debtor retail space located at 8625 Seminole Trail in Ruckersville, Virginia ("the Premises") wherein the Debtor operated a restaurant trading as "Tony Gee's".

---

[1] Vassilios Hatzigeorgio is the sole owner of the Debtor.

[2] Dean Family Exhibit #1.

1

In September of 2012, the Debtor sublet the Premises to another entity without Dean's prior permission. The subtenant vacated the premises in November of 2012. The Debtor paid the rent due under the Lease through December of 2012. The Debtor paid the January rent, but did not pay it when due and did not pay the January late fees due under the Lease.

On January 27, 2012, Dean Family served a notice of default[3] ("the First Notice of Default") on the Debtor by mailing the same to the residence of Mr. Hatzigeorgio. The First Notice of Default was based on the fact that the Debtor had failed to pay the rent and late fees due for the month of January, 2012.

In February of 2012, the Debtor sublet, or attempted to sublet, the Premises to Ten Ton, Inc., ("Ten Ton") trading as "Southern Comfort" without the prior permission or knowledge of Dean Family. The Debtor also agreed to sell equipment[4] on the Premises to Ten Ton. After Dean Family became aware of the attempted sublet, Dean Family and the Debtor sought to reach an agreement regarding the sublease, but were unable to do so. The parties were unable to reach an accord because Dean Family wanted the Debtor to assign the Lease to Ten Ton and the Debtor wanted to merely sublet the Premises to Ten Ton. There were additional problems concerning whether, and in what manner, the Debtor would retain a security interest in the equipment that it sold to Ten Ton. The parties could not resolve these issues and so Ten Ton was unable to obtain a lease for the Premises.

On or about April 6, 2012, Ten Ton, which was unable to obtain a liquor license because it had no lease, vacated the Premises and Dean Family took over possession of the Premises.

---

[3] Dean Family Exhibit #2.

[4] Garret Smith, Esq., counsel for Mr. Hatzigeorgio, testified that Mr. Hatzigeorgio sought to sell the equipment on the Premises to Ten Ton for $150,000.00. *See* Transcript of Hrg., p. 26

2

On February 27, 2012, Dean Family served a second notice of default[5] ("the Second Notice of Default") on the Debtor by mailing the same to the Debtor at the location of the Premises. The Second Notice of Default was based on the fact that the Debtor had placed a new Tenant (Ten Ton) in possession of the premises without the express written consent of Dean Family, had failed to provided a certificate of insurance[6], had failed to maintain a deposit of $3,000.00, and had failed to pay legal fees concerning the review of the sublease terms and conditions.

On April 25, 2012, the Debtor filed a petition in bankruptcy initiating the above-styled case. The Debtor has not paid rent for any month after January of 2012.

## *Discussion*

Dean Family first seeks an order declaring the Lease terminated pre-petition. In the alternative, Dean Family seeks an order compelling the Debtor to assume or reject the Lease by June 16, 2012. The Debtor responds by seeking an order that permits it to assume or reject the lease within 120 days of the date of petition and that permits it an additional 30 days to cure the existing defaults.

I.

Dean Family first seeks an order declaring the Lease to have been terminated pre-petition. This request is made on the basis that the Debtor failed to pay rent for the months of February, March, and April of 2012 and late payments for February and March of 2012.[7] It is further made

---

[5] Dean Family Exhibit #3.

[6] The Lease requires that the tenant maintain personal property insurance and liability insurance with respect to the Premises. Mr. Hatzigeorgio testified that, on the date of the hearing on this matter, the Debtor did not have any such insurance in place. *See* Transcript of Hrg., p. 59-60.

[7] Dean Family asserted, that as of the date of the motion, that the Debtors were in arrears a total of $19,554.33 for past-due rent, late fees, attorneys fees and costs, and a security deposit deficiency.

3

on the grounds that the Debtor sublet the Premises without the permission of Dean Family.

A.

One basis for termination of a lease is forfeiture. Forfeiture occurs when a party breaches a covenant or condition that is expressly provided for in the lease. A breach of an implied covenant will suffice to terminate a lease. *See, e.g. Core v. New York Petroleum Co.*, 52 W. Va. 276, 43 S.E. 28 (1902). The condition or covenant must be demonstrated by clear words in the lease. *See Gale v. Oil Run Petroleum Co.*, 6 W.Va. 200 (1873). The breach of a condition against subletting is a ground for forfeiture. *See McKildoe v. Darracott*, 54 Va. (13 Gratt.) 278 (1856).

Dean Family asserts that the Debtor breached two provisions under the Lease, the provision concerning rent and that concerning sublet or assignment of the Lease. The Court agrees. The Lease provides that the Debtor shall pay rent in certain amounts provided therein.[8] Failure to pay rent as due under the Lease constitutes default under the Lease. The Debtor did not timely pay the January rent due under the Lease. While the Debtor subsequently paid the January rent pre-petition, as of the date of the hearing on this matter, the Debtor had, at a minimum, failed to pay the late charge due for January of 2012 and had failed pay rent for the months of February, March, and April of 2012. Accordingly, the Debtor was, and is, in default under the rent provisions of the Lease.

The Debtor also defaulted under the Lease when, in February, 2012, it contracted to sublet the Premises Ten Ton, Inc. The Lease provides:

<u>Sublease and Assignment:</u>

Tenant shall not sublease all or any part of the Leased Premises, or assign this Lease in part or in whole *without the express written consent of the Landlord*. In the event that Tony Gee's Inc. desires to sublease or assign this Lease, Landlord herein reserves the absolute right to review financial information on the proposed Sub-Lessee to verify that the

---

[8] See Lease, Exhibit #1, pp. 1-2.

4

> prospective Tenant has the ability, experience, and financial resources to operate a successful restaurant business and honor the terms of the lease agreement. This decision is in the sole discretion of the Landlord. Tenant's Interest maybe [sic] assigned only if all the terms, conditions, and covenants of the lease agreement are in compliance.

Lease, p. 2-3. (Emphasis added.) The Debtor did not obtain permission from Dean Family to sublet the Premises as required by the Lease. The Debtor is also in default under this provision of the Lease.

The Debtor argues that Dean Family unreasonably withheld its permission to sublet the Premises to Ten Ton because the principals of Dean Family did not like Mr. Hatzigeorgio. In support of this proposition, the Debtor cites testimony by a principal of Dean Family that he had frequented Southern Comfort and had liked the proprietor and had liked the food. The problem with the Debtor's assertion is two-fold. First, the Debtor attempted to sublet the Premises without either the knowledge or the permission of Dean Family. Second, the Lease requires the Debtor to be current on all of it's obligations under the Lease before the Premises may be sublet or the Lease may be assigned. When the Debtor sublet the Premises, the Debtor was in default under the Lease in that it had not paid its January, 2012, rent or the late fees associated with the late January rent payment. While the Debtor eventually paid the January rent, it has not, to this day, paid the late fees for January, 2012. Consequently, Dean Family reasonably withheld permission to sublet the Premises to Ten Ton, Inc.

B.

The Lease, however, was not terminated pre-petition, notwithstanding the fact that the Debtor was in default. While a default under a lease may be a prerequisite for terminating that lease, the existence of an event of default under the lease does not necessarily constitute termination. The Lease provides that Dean Family must give the Debtor sixty days notice of any intent to declare the

5

lease terminated.

> Default:
>
> In the event of default made by Tenant in any of the other covenants or conditions to be kept, observed and performed by Tenant, Tenant shall have sixty (60) days after receipt of written notice thereof to cure such default. In the event that Tenant shall fail to cure any default within the time allowed under this paragraph, Landlord may declare the term of this Lease ended and terminated by giving the Tenant written notice of such intention, and if possession of the Leased premises is not surrendered, Landlord may reenter said premises and take possession. All equipment on the premises shall remain on the premises. Landlord shall have, in addition to the remedy above provided, any other right or remedy available to Landlord on account of Tenant default, either in law or equity. Landlord shall use reasonable efforts to mitigated its damages.

Lease, p. 6.

Said notice must be provided in the manner prescribed under the Lease. The Lease provides that:

> . . . Tenant's street address is 8625 Seminole Trail, Ruckersville, Virginia 22968. Tenant's mailing address is 8625 Seminole Trail, Ruckersville, Virginia 22968. Any notice to Tenant may be delivered to the above addresses or to the premises.

Lease, p. 7. Forfeiture clauses in leases are to be construed strictly under Virginia law.

> The general principle that contractual provisions for forfeiture are looked upon with disfavor by the courts is applicable to contracts of lease. Such stipulations are strictly construed and when they are invoked by a landlord for nonpayment of rent, equity may relieve against them if complete justice can be done by the payment or tender of the arrears. It is recognized that payment of the rent is the object of the contract, and that the provision for forfeiture is inserted to insure this result.

*Galvin v. Southern Hotel Corp.,* 154 F.2d 970, 973 (4th Cir.1946) (applying Virginia law). *Also see In re Cafeteria, Inc.*, 47 B.R. 404 (W.D.Va. 1985) (Citing the quoted language from *Galvin* and permitting the debtor to cure the default under 11 U.S.C. § 365.)

Dean Family served two notices of default. On January 27, 2012, Dean Family served the First Notice of Default upon the Debtor by mailing the same to the residence of Mr. Hatzigeorgio.

On February 27, 2012, Dean Family served the Second Notice of Default upon the Debtor by mailing the same to the Debtor at the address of the Premises.

Neither notice was effective. The First Notice was mailed to the Debtor at the residence of Mr. Hatzigeorgio. The Lease provides that any such notice is to be mailed to the Premises. While the Debtor may have actually received the First Notice in a timely fashion, contractual provisions for forfeiture are looked upon with disfavor under Virginia law and, accordingly, notice requirements are strictly construed. The First Notice of Default was not effective.

The Second Notice of Default was mailed to the Debtor at the Premises on February 27, 2012. The Debtor filed its petition on April 25, 2012. Consequently, even if the Debtor received the Second Notice of Default on the date that it was mailed, the Debtor would not have received the required notice period of sixty days in which to cure the default(s) before the date of petition. Thereafter, Dean Family was prohibited from serving a notice of termination by the automatic stay. *See* 11 U.S.C. § 362(a). Accordingly, the Second Notice of Default was not effective.

Neither notice of default was effective under the provisions of the Lease. The Lease was not properly terminated by Dean Family under the provisions therein. The motion to declare the Lease terminated will be denied.

II.

In the alternative, Dean Family seeks an order compelling the Debtor to accept or reject the Lease by June 16, 2012.[9] If a Chapter 11 debtor-in-possession is a lessee of nonresidential real property under an unexpired lease, the debtor will be given 120 days from the date of petition (or

---

[9] June 16 is the date that the hearing on this matter was heard. The parties agreed to a briefing schedule that provides for a reply brief that is due by July 16, 2012. Accordingly, it would be impossible to grant an order that would compel the Debtor to accept or reject the Lease by June 16, 2012.

7

sooner if a plan has been confirmed by the entry of an order) in which to assume or reject the unexpired lease. If the debtor fails to so assume or reject the lease by that date, the lease is deemed rejected and the debtor is required to immediately surrender the nonresidential real property to the landlord. 11 U.S.C. § 365(d)(4)(A)[10].

The Debtor filed its petition on April 25, 2012. The date that is 120 days after that date is August 23, 2012. The Debtor will be required to file with Clerk of the Court, and serve on Dean Family, LLC, a statement either accepting or rejecting the Lease on or before August 23, 2012. If the Debtor fails to timely file such a statement or if the Debtor rejects the Lease, the Debtor shall immediately vacate and surrender the Premises to Dean Family, LLC.

If the Debtor accepts the Lease, the Debtor will be required to cure all defaults under the Lease on or before August 30, 2012, the date that is seven days after the deadline to accept or reject the Lease. The Debtor asks for 30 days from that date to cure. The Debtor has, to this point in the case, been derelict in his obligations under the lease. A Chapter 11 debtor-in-possession shall perform all the functions and duties, with certain exceptions not applicable here, of a Chapter 11 trustee. 11 U.S.C. § 1107(a). The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. 11 U.S.C. § 365(d)(3). The Court is not inclined to

---

[10] Section 365(d)(4)(A) provides:

Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of--(I) the date that is 120 days after the date of the order for relief; or
(ii) the date of the entry of an order confirming a plan.

8

give the debtor the time requested, given the Debtor's failure to perform its obligations under the Lease. The Debtor shall cure all defaults under the lease within seven days of August 23, 2012.

In order to cure all defaults, the Debtor shall, at a minimum, continuously contract to place all insurance(s) required under the Lease and pay to the Dean Family, LLC, the full amount of rent that is due under the Lease on the date of the payment. Such amount shall include, at a minimum, all rent due under the Lease, all late payments due under the Lease, and an amount sufficient to restore the deposit to three thousand dollars ($3,000.00). If the Debtor fails to cure all defaults on or before the date prescribed above, the Lease will be deemed terminated.

In its brief, Dean Family asserts that it is owed a total of $27,685.85 through July 1, 2012. The court has reviewed all of these amounts and concluded that they are all appropriate. The Debtor shall pay to Dean Family, LLC, on or before August 30, 2012, $27,685.85 plus any accrued rent for the month for August, 2012, plus applicable late fees.

III.

A.

The Debtor asserts that Dean Family breached the Lease by taking possession of, and changing the locks on, the Premises before the expiration of the 60-day cure period. On the basis of this argument, the Debtor further asserts that Dean Family cannot now argue that the Debtor has no right to assume the lease. The Debtor further argues that the breach prohibits Dean Family from demanding rent after April 9, 2012.

On April 6, 2012, Dean Family, based on the First Notice of Default, gave notice to the Debtor by mail that it intended to terminated the Lease. On or about April 9, 2012, after Ten Ton

9

had vacated the Premises[11], Dean Family changed the locks on, and took possession of, the Premises. When it did so, Dean Family told the principal of Ten Ton that he could have access to the Premises at any time. It is a bit disingenuous for the Debtor to complain that Dean Family secured the Premises when it allowed a tenant to occupy the Premises in violation of the Lease. Further, Mr. Hatzigeorgio admitted that had removed equipment from the Premises to pay his debts.[12] Dean Family was simply protecting its investment. Further, Dean Family had a duty under the Lease to mitigate damages to the Debtor.[13] Thereafter, the Debtor never sought access to the Premises until after filing its bankruptcy petition. It is concluded that the Debtor had access to the Premises at all relevant times. Accordingly, there is no reason to offset any of the rent owed under the Lease.

B.

The Debtor also argues that Dean Family arbitrarily and unlawfully withheld its consent to a sublease by the Debtor to Ten Ton. The argument is without merit. The Sublease and Assignment paragraph of the Lease provides that the "Tenant shall not sublease all or any part of the Leased Premises, or assign this Lease in part or in whole without the express written consent of the Landlord." The Debtor never received permission from Dean Family to sublet the Premises. In fact, the Debtor did not even inform Dean Family of the intended sublet before Ten Ton occupied the Premises.

The Sublease and Assignment paragraph of the Lease also provides that the "Tenant's Interest maybe [sic] assigned only if all the terms, conditions, and covenants of the lease agreement

---

[11] Ten Ton was forced to close its doors because it could not acquire a liquor license because it never executed a sublease approved by Dean Family.

[12] See Transcript of Hrg., p. 78.

[13] See Lease, Exhibit no. 1, p. 6

10

are in compliance." The Debtor was in breach of the Lease when Ten Ton opened for business. Dean Family was within its rights under the Lease in refusing to grant the Debtor permission to sublet the Premises.

The Debtor also argues that Dean Family breached the Lease by refusing to accept the February rent from Ten Ton. Ten Ton paid the February, 2012, rent but Dean Family returned it the next day. The Debtor asserts that this was not consistent with the practice of the parties at the time because they were then negotiating the terms of a sublease. Dean Family, however, had no duty to accept the rent from Ten Ton. A sublease creates no privity of contract between the landlord and the sublessee. 11B Michie's Jurisprudence "Landlord and Tenant" § 42 (2011). Accordingly, even if the parties had executed a sublease, the Debtor would have had no obligation to accept the rent from Ten Ton, unless a sublease executed by Dean Family provided for such a direct payment. Further, Ten Ton could have simply paid the Debtor, who could then have paid Dean Family. The refusal of Dean Family to accept the February, 2012, rent payment from Ten Ton did not constitute a breach of the Lease.

*Conclusion*

The Debtor was in default pre-petition under the Lease between the Debtor and Dean Family, LLC. The Lease, however, was not terminated. The Debtor may accept or reject the Lease. The Debtor must do so by August 23, 2012, and cure all defaults by August 30, 2012.

**ORDER**

The Debtor shall accept or reject the Lease between the Debtor and Dean Family, LLC, by filing a statement with Clerk of this Court on or before August 23, 2012. If the Debtor fails to timely file such a statement or if the Debtor rejects the Lease, the Lease shall be deemed rejected for all

purposes and the Debtor shall immediately vacate and surrender the Premises to Dean Family, LLC.

If the Debtor timely accepts the Lease, the Debtor shall cure all defaults under the Lease on or before August 30, 2012. In order to cure all defaults, the Debtor shall, in addition to continuing to carry the insurance(s) required under the Lease, pay to the Dean Family, LLC, the full amount of rent that is due under the Lease on the date of the payment. The Debtor shall also pay an amount sufficient to fund the deposit in the total amount of $3,000.00. The total amount necessary to cure the default is, and shall be, the amount of $27,685.85 (constituting the amount due as of July 1, 2012) plus any additional accrued rent and accrued late fees, if applicable.

If the Debtor fails to cure all defaults on or before August 30, 2012, the Lease will be deemed terminated.

So ORDERED.

Upon entry of this Order the Clerk shall forward a copy to Nancy R. Schlichting, Esq., Marshall M. Slayton, Esq., and the United States Trustee.

Entered on this   20th   day of July, 2012.

_____
William E. Anderson
United States Bankruptcy Judge

12